# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## 5:19-cv-00007-KDB
## (5:16-cr-00046-KDB-DSC-2)

| | | |
|---|---|---|
| TANGIE NICOLE CARROLL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct

Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

## I.     BACKGROUND

On September 20, 2016, Petitioner Tangie Nicole Carroll ("Petitioner") was charged in a

Bill of Indictment with one count of methamphetamine trafficking conspiracy in violation of 21

U.S.C. §§ 841(a)(1) and 846 (Count One). [CR Doc. 19: First Superseding Bill of Indictment].

The Indictment charged that Petitioner, along with her co-conspirators Roderick Anthony Roberts,

Jamie Lee Grigg, Reginald Jerry Shaw, and Zachary Robert Testerman, was responsible for 500

grams or more of a mixture and substance containing a detectable about of methamphetamine, 21

U.S.C. § 841(b)(1)(A). [Id. at 1].

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 5:19-CV-00007-KDB, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 5:16-cr-00046-KDB-DSC-2.

Before she was indicted, an investigative team interviewed Petitioner while she was incarcerated at Southern Correctional Institute in Troy, North Carolina, on a different charge. [CR Doc. 141-1 at 1]. During this interview, Petitioner admitted, among other things, that, by her birthday on May 31, 2016, she was obtaining two pounds of methamphetamine, six days per week for approximately four weeks. [Id. at 3]. Petitioner's trial was initially set for January 9, 2017. [11/18/2016 CR Docket Entry]. On December 14, 2017, Petitioner's motion to continue her trial was granted and the matter was reset for the March 6, 2017 trial term.[2] [CR Doc. 92]. On January 27, 2017, Petitioner's plea hearing was noticed, and the Government filed a Factual Basis. [CR Doc. 102: Factual Basis]. On February 9, 2017, Petitioner pleaded guilty "straight up" without a plea agreement. [CR Doc. 105: Acceptance and Entry of Guilty Plea].

At her plea hearing, Petitioner agreed that there was a factual basis for her plea; that she had read, understood, and agreed with the Factual Basis; that she was not being "threatened, intimidated or forced" to plead guilty; and that she was, in fact, guilty of the offense to which she was pleading guilty. [CR Doc. 157 at 9-11: Plea Hearing Tr.]. Petitioner further testified that she was "fully satisfied" with the services of her attorney and declined the opportunity to state anything to the Court regarding those services. [Id. at 11]. Petitioner also testified that she had discussed with her attorney how the sentencing guidelines might apply to her case. [CR Doc. 157 at 6].

The factual basis included the drug quantity amount admitted to by Petitioner in her pre-indictment interview with law enforcement, noting that "[b]y [Petitioner's] birthday on May 31st, [Petitioner and Roberts] obtained an average of 2 pounds, six times per week, totaling 22 kilograms." [CR Doc. 102 at 2: Factual Basis]. Petitioner, however, specifically objected to this statement and reserved her right to object to any drug amounts beyond 500 to1500 grams. [Id. at

---

[2] The plea deadline for a case set for the March 6, 2017 trial term would have been February 18, 2017.

2, n.1].  The Court found that Petitioner's guilty plea was made knowingly and voluntarily and that she understood the charges, potential penalties, and consequences of her plea. [CR Doc. 157 at 12].

Before Petitioner's sentencing, a probation officer prepared a Presentence Investigation Report (PSR).  [CR Doc. 128: PSR].  In the PSR, the probation officer reported that, in addition to the Factual Basis, "the U.S. Attorney's Office provided discovery documents, including laboratory reports which indicate average purity levels of 94.8% and 100.2% of methamphetamine hydrochloride." [Id. at ¶ 9].  The probation officer recommended a base offense level of 38 under U.S.S.G. §2D1.1 for 4.5 kilograms or more of actual methamphetamine or "Ice." [Id. at ¶ 15 (citing U.S.S.G. §2D1.1(a)(5))].  The probation officer also recommended a three-level increase for Petitioner's role in the offense and a three-level reduction for acceptance of responsibility, yielding a Total Offense Level (TOL) of 38.  [Id. at ¶¶ 18, 22-24].  With a Criminal History Category of IV, the resultant guideline range for imprisonment was 324 to 405 months.  [Id. at ¶¶ 39, 69].  The statutory mandatory minimum term of imprisonment was ten (10) years, 21 U.S.C. §§ 846 and 841(b)(1)(A).  [Id. at ¶ 68].

Petitioner objected to, among other things, the PSR's recommended base offense level of 38, contending that "[t]here is no evidence of her dealing or being responsible for 4.5 kilograms of Methamphetamine from prior to June 9, 2016."  [CR Doc. 126 at 2: Objections to PSR]. Petitioner argued that "[e]ven lad [sic] reports provided to [Petitioner] during the relevant period of her involvement in this conspiracy come no where close to this amount.  In addition, [Petitioner's] alleged co-conspirators have been held responsible for less than the amount the probation officer indicates is reasonably foreseeable to [Petitioner]." [Id.].  In the Sentencing Memorandum Petitioner filed before her sentencing hearing, Petitioner noted, "[t]he government

3

and [Petitioner] could not agree on the drug amount she was responsible for, [Petitioner] believes that 500 or more grams but less than 1.5 kilograms of methamphetamine was foreseeable to her." [CR Doc. 139 at 4: Sentencing Memorandum]. Petitioner, based on this lower drug quantity, argued for a base offense level of 34 and a TOL of 31 after adjustments, yielding a guideline range for imprisonment of 151 to 188 months. [Id.]. Petitioner then noted the Government's motion for downward departure based on substantial assistance, which requested a term of imprisonment of 151 months, after a recommended reduction in Petitioner's TOL from 38 to 31 under U.S.S.G. §5K1.1. [Id. at 5; see CR Doc. 137]. Ultimately, Petitioner asked for a mandatory minimum sentence of 120 months considering the § 3553(a) sentencing factors. [Id. at 5-14].

Petitioner's sentencing hearing was held on August 7, 2017. [CR Doc. 158: Sentencing Tr.]. At sentencing, Petitioner again testified that she was satisfied with the services of her attorney and that she was pleading guilty freely and voluntarily. [Id. at 2-3]. Petitioner also again admitted to being guilty of methamphetamine trafficking conspiracy. [Id. at 3]. Petitioner's counsel argued on the objection to the drug quantity in the PSR, contending that the evidence did not support a finding that Petitioner distributed more than 4.5 kilograms of methamphetamine. [Id. at 5-6]. In response, the Government noted the lab reports reflecting that it was high purity methamphetamine or "Ice" being trafficked. [Id. at 6]. The Government pointed to Petitioner's "own confession" in which "she herself admits drug trafficking historically more than 4.5 kilograms in weight. And that's confirmed by her boyfriend and co-conspirator who was just sentenced where he describes over a two to three month period when he was working for [Petitioner] … he admitted to more than 10 pounds, which in and of itself, just that short period of the entire conspiracy, even that short period would account for more than 4.5 kilograms." [Id. at 6-7].

4

The Court overruled Petitioner's objection to the drug quantity, finding the Government's evidence "strong and well recognized" and corroborated by Petitioner's co-conspirators. [CR Doc. 158 at 7]. After further argument on other objections, the Court adopted the PSR for all purposes of sentencing and noted its guideline recommendation of 324 to 405 months. [Id. at 9]. Thereafter, the Court addressed the Government's motion for downward departure and ultimately granted an eight-level decrease to a TOL of 30, which yielded a guidelines range of 135 to 168 months. [Id. at 9, 18]. The Court sentenced Petitioner to a term of imprisonment of 135 months at the low end of the guidelines range. [Id. at 18]. Judgment on Petitioner's conviction was entered on August 9, 2017. [CR Doc. 146: Judgment]. Petitioner appealed her sentence, challenging the drug quantity attributed to her. United States v. Carroll, 714 Fed. App'x 302, 303 (4th Cir. 2018) (unpublished decision). The Fourth Circuit upheld this Court's drug quantity determination and affirmed Petitioner's sentence. Id.

On January 17, 2019, Petitioner timely filed the instant motion to vacate under § 2255 and a motion to expand the record to include a supporting Affidavit by Petitioner.[3] [CV Docs. 1, 2]. Petitioner argues that her counsel was ineffective for advising Petitioner to reject a "clearly favorable formal plea offer from the United States." [CV Doc. 1 at 21]. In her Affidavit, Petitioner claims the Government made Petitioner a formal plea offer with a drug quantity "cap[ped] at BOL 36 (15-45 kilograms)." [CV Doc. 2 at 5]. Petitioner further claims that:

> [Counsel] advised me not to accept the United States' formal plea offer because they were charging me with 22 kilograms of methamphetamine which was not seized from me. She refused to agree to that amount – because my co-defendants were being held responsible for so much less – and stated that we were not accepting

---

[3] The Court will allow Petitioner's motion pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings, which allows the parties to expand the record by submitting additional materials relating to the motion, including affidavits.

Case 5:16-cr-00046-KDB-DSC   Document 175   Filed 08/06/20   Page 5 of 13

the plea offer. [Counsel] was very confident and adamant that the
United States would make a better offer.

[CV Doc. 2 at 2]. Petitioner claims that she "was prepared to accept the offer and had no problem with the drug amount because [she] admitted to it during a pre-indictment interview and was cooperating with the United States." [Id.]. The Government, on this Court's Order, timely responded [CV Docs. 3, 5] and Petitioner replied [CV Doc. 8].

This matter is now ripe for adjudication.

## II.      STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.     DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

6

evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

"Judicial scrutiny of counsel's performance must be highly deferential," as it "is all too tempting

for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is

all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude

that a particular act or omission of counsel was unreasonable." Id. Further, counsel has "wide

latitude … in making tactical decisions." Id.

A petitioner must also establish prejudice in the form of "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694. In considering the prejudice prong of the analysis, the Court "can

only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or

unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell,

506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of

affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the

petitioner fails to meet this burden, a "reviewing court need not even consider the performance

prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other

grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is

a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill

v. Lockhart, 474 U.S. 52, 59 (1985)). "To show prejudice from ineffective assistance of counsel

where a plea offer has lapsed or been rejected because of counsel's deficient performance," a

petitioner must "show a reasonable probability that the end result of the criminal process would

7

have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Missouri v. Frye, 566 U.S. 134, 147, 132 S. Ct. 1399, 1409 (2012).

In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

"'When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea.'" United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (quoting United States v. Bundy, 392 F.3d 641, 644 (4th Cir. 2004)). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Defendants are entitled to effective assistance of competent counsel during plea negotiations. McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441 (1970). Effective

assistance of counsel at the plea-bargaining stage requires that defense counsel "communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 566 U.S. at 145, 132 S. Ct. at 1408. This duty certainly applies where a plea offer is formal and with a fixed expiration date. Id.

Here, Petitioner claims her attorney gave her bad advice to decline a plea deal that would have recommended that this Court find a base offense level of 36 based on a drug quantity of 15 to 45 kilograms. Petitioner's allegations on this issue do not establish ineffective assistance.

First, to the extent Petitioner's attorney predicted "that the United States would make a better offer," [Doc. 2 at 3], Petitioner has alleged no facts that, if proved, would establish that counsel's prediction was objectively unreasonable. The Court must seek to obviate the "the distorting effects of hindsight." Strickland, 466 U.S. at 690. Further, "an erroneous prediction by counsel" ordinarily "does not establish constitutionally deficient performance." Flores v. United States, 3:15-cv-484-MOC, 2016 WL 6775693, at *4 (W.D.N.C. Nov. 14, 2016). See Lafler v. Cooper, 566 U.S. 156, 174 (2012) ("[A]n erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."); McMann, 397 U.S. at 770 ("[A] defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession.").

Second, the record supports the reasonableness of counsel's alleged advice. Petitioner's counsel noted, for example, that Petitioner's supplier had entered a plea agreement containing a joint recommendation that the Court find him responsible for the same 15 to 45 kilograms drug quantity allegedly offered to Petitioner. [CR Doc. 143-2 at 2: Shaw Plea Agreement]. Petitioner's counsel noted in filings with the Court that the police had seized a quantity of methamphetamine from Petitioner's supplier greater than that attributed to Petitioner in the "largest single seizure of

9

methamphetamine we've had in the history of this district." [CR Doc. 139 at 13]. As such, Petitioner's counsel could have reasonably believed that the Government would consider making a more favorable offer to Petitioner than they had given to a supplier found with a greater quantity of drugs. Namely, an objectively reasonable attorney could have concluded that refusing a less generous offer outright would be effective in securing additional concessions. See Frye, 566 U.S. at 144-45 ("The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision."). As such, a prediction by counsel that a better offer might follow if Petitioner refused to accept a recommended base offense level of 36 falls within the wide range of reasonable professional judgment.

Third, a reasonable attorney could have concluded that the benefits of the Government's offer did not outweigh the concessions any plea agreement would have likely required and that rejecting the offer would expose Petitioner to comparatively little downside risk. A recommended base offense level of 36 is only two less than the offense level corresponding to the highest possible quantity of methamphetamine. U.S.S.G. §2D1.1(c)(1). Petitioner's attorney certainly knew that the Government would provide the Court with all relevant information during sentencing and the probation officer preparing the PSR would review all discovery regardless of any base offense level recommendation. [See CR Doc. 128]. Furthermore, Petitioner's own allegations demonstrate that her counsel was aware of the credit Petitioner expected to receive for her cooperation and that it would be a dominant factor in her sentencing. [See CV Doc. 2 at 4]. Counsel, therefore, could have reasonably concluded that the facts before the Court on Petitioner's offense and her cooperation would likely have a much greater influence on the Court's sentence than a base offense level recommendation.

Finally, at Petitioner's plea hearing, she testified, after allegedly rejecting the earlier, favorable plea offer, that she was satisfied with the services of her attorney and declined the chance to speak about those services. Petitioner also agreed that there was a factual basis for her plea; that she had read, understood, and agreed with the Factual Basis; that she was not being "threatened, intimidated or forced" to plead guilty; and that she was, in fact, guilty of the offense to which she was pleading guilty. Petitioner also testified that she had discussed with her attorney how the sentencing guidelines might apply to her case. Thereafter, the Court found that Petitioner's guilty plea was made knowingly and voluntarily and that she understood the charges, potential penalties, and consequences of her plea. Then, at sentencing, after Petitioner reviewed her PSR, which recommended a base offense level of 38 and detailed her counsel's argument disputing the drug quantity, she again testified that she was "fully satisfied with the services of [her] attorney in this matter. [CR Doc. 158 at 2]. The Court granted the Government's motion for downward departure, but rather than departing only seven levels, as requested, departed eight levels to a TOL of 30 after Petitioner's counsel's argument. [CR Doc. 137 at 3; CR Doc. 147 at 2; CR Doc. 158 at 10-11, 18]. As noted, the Court sentenced Petitioner to term of imprisonment of 135 months, only 15 months greater than the applicable mandatory minimum sentence. Ultimately, Petitioner's testimony regarding her satisfaction with her attorney's services "carr[ies] a strong presumption of verity." Lemaster, 403 F.3d at 221. And, in keeping with that testimony, there appeared no reason at the time of sentencing for Petitioner to be dissatisfied with those services.

Moreover, Petitioner has not established prejudice in the form of a "reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Frye, 566 U.S. at 147. The Court ultimately

held Petitioner responsible for 22 kilograms of drugs, which was within the 15 to 45 kilograms range that Petitioner alleges the Government offered to recommend. Petitioner, however, received a base offense level of 38 instead of 36 because the Court adopted the PSR's conclusion that the substance for which Petitioner was responsible was "Ice" – high purity methamphetamine. See U.S.S.G. §2D1.1(c)(1); CR Doc. 128 at ¶ 9]. The probation officer, as expected, reviewed discovery documents, including lab reports, that reflected the purity of the methamphetamine for which Petitioner was responsible. The probation officer would have received and reviewed these documents despite any recommended base offense level in a plea agreement. Petitioner has not identified how a different conclusion could have been reached regarding the purity of drugs had she accepted the Government's plea offer. As such, because responsibility for "15-45 kilograms" of high-purity methamphetamine would have yielded a base offense level of 38 regardless, Petitioner cannot establish a reasonable probability that she would have received a different advisory guideline range, let alone "a sentence of less prison time" after the Court departed downward on her sentence. See Frye, 566 U.S. at 147.

In sum, this claim should be denied for Petitioner's failure to show that her counsel's performance was deficient or that she was prejudiced by her counsel's performance. See Strickland, 466 U.S. at 687-88.

IV.     **CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1.      Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2.      Petitioner's Motion to Expand the Record [Doc. 2] is **GRANTED**.

3.      **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing

Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of

appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338

(2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims

debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

denied on procedural grounds, a petitioner must establish both that the dispositive

procedural ruling is debatable and that the petition states a debatable claim of the

denial of a constitutional right).

Signed: August 5, 2020

Kenneth D. Bell
United States District Judge